MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 59
Docket:        Ken-23-393
Argued:        May 7, 2024
Decided:       August 8, 2024

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, and LAWRENCE, JJ.

PATRICK GORDON

v.

MAINE COMMISSION ON PUBLIC DEFENSE SERVICES

MEAD, J.

[¶1]  Patrick Gordon appeals from the judgment of the Superior Court (Kennebec County, *Lipez, J.*), entered pursuant to M.R. Civ. P. 80C, affirming a final decision of the Maine Commission on Public Defense Services,[1] that suspended him from Commission rosters and thereby rendered him ineligible for assignment to represent indigent criminal defendants.  *See* M.R.U. Crim. P. 44(a)(1)-(2).  Upon review of the Commission's decision, we affirm.

## I.  BACKGROUND

[¶2]  The Commission "is an independent commission whose purpose is

---

[1]  During the underlying proceedings and when this appeal was filed, the Maine Commission on Public Defense Services was called the Maine Commission on Indigent Legal Services, but the Commission's title was changed on March 21, 2024.  *See* P.L. 2023, ch. 558, § 2 (emergency, effective Mar. 21, 2024).

2

to provide efficient, high-quality representation to indigent criminal defendants, juvenile defendants and children and parents in child protective cases, consistent with federal and state constitutional and statutory obligations." 4 M.R.S. § 1801 (2024). Rule 44 of the Maine Rules of Unified Criminal Procedure requires the court to appoint attorneys listed on rosters maintained by the Commission to serve as counsel for indigent criminal defendants who are at risk of incarceration or certain collateral consequences. M.R.U. Crim. P. 44(a).

[¶3] At the time of the proceedings here, attorneys who wished to be listed on a Commission roster were required to register with the Commission. *See* 94-649 C.M.R. ch. 2, § 3 (effective Sept. 17, 2015).[2] To be compensated by the Commission for work on a case, a Commission-rostered assigned attorney must submit a voucher reflecting the work performed for the client in that case. *See* 94-649 C.M.R. ch. 301, § 6 (effective Feb. 6, 2024).

[¶4] Gordon first registered with the Commission in or about 2010 and reregistered annually with the Commission in the following years.

---

[2] There has been an amendment to 94-649 C.M.R. ch. 2 since the underlying proceedings in this appeal, *see* 94-649 C.M.R. ch. 2 (effective May 14, 2024), but the amendment does not affect this appeal.

[¶5]  In January of 2021, the Commission received information from an attorney who had been assigned as post-conviction review (PCR) counsel for a client whom Gordon had represented at trial as assigned counsel compensated by the Commission.  The information prompted the Commission to begin an investigation into Gordon's billing and statements related to his representation of the client.  Specifically, the information suggested that Gordon had submitted a voucher for representing the client in a jury trial when the trial was in fact a bench trial and that certain time entries in the vouchers were for work done not by Gordon but by a paralegal or another attorney at Gordon's firm. Additionally, there appeared to be a discrepancy as to whether it had actually been Gordon who had visited his client at all of the times the billing records listed.  The Commission believed that the information shared by the PCR counsel raised questions concerning Gordon's performance representing indigent clients and apparent inaccuracies in Gordon's billing for work done in the case.

[¶6]  During the Commission's investigation of Gordon, the following events transpired:

- On February 12, 2021, Justin Andrus, the Commission's Interim Executive Director, sent Gordon a letter informing him of the investigation and requesting the following documents and information:

4

- o Request 1: Gordon's client file from his representation of the client;

- o Request 2: clarification as to any potential billing discrepancies in relation to the client's case;

- o Request 3: clarification as to the discrepancy in Gordon's payment voucher that represented a bench trial to be a jury trial; and

- o Request 4: a list of the dates that Gordon met with the client.

- On February 19, 2021, Gordon informed the Commission of his receipt of the letter and on March 10, 2021, requested further time to respond to the requests.

- On March 15, 2021, Gordon emailed a letter to Andrus responding to the requests. Initially Gordon raised questions about the investigation process and whether Andrus, as interim executive director, had the authority to conduct the investigation.[3] Referencing the Commission's four requests, Gordon responded as follows:

  - o As to Request 1: he thought that his response to Request 1 needed to be limited due to his concerns about violating attorney-client privilege, he believed that the Commission had the billing statement in the case, and he would provide no further documents;

  - o As to Request 2: upon reviewing the billing records, he noted one entry for attorney work that appeared to have been billed by an office manager, but that it had only been "entered" by the manager, and not improperly billed;

---

[3] The Commission's rules in force at that time referred to the "Executive Director" in the section that required a Commission rostered attorney to "comply with any Commission investigation of complaints . . . or other information that, in the view of the *Executive Director*, concerns the question of whether the attorney is fit to remain on the roster." 94-649 C.M.R. ch. 2, § 2(2) (effective Sept. 17, 2015) (emphasis added).

- As to Request 3: the trial in question had indeed been a bench trial, but Gordon was not aware of the voucher that misrepresented the bench trial as a jury trial; and

- As to Request 4: he was "not sure exactly of all the dates [he] met with [the client]," "rarely entered all of [his] billing time," and provided a non-exhaustive list of times he "believe[d he] met with [the client]," acknowledging that in some instances he did not "know the dates" of the meetings.

Gordon further stated that if the Commission required more information, he would be willing to supply it and requested that the Commission provide more specific details about what was sought by the requests.

- On April 30, 2021, by email and letter, Andrus responded to Gordon's letter, asserting the appropriateness of the process and his authority to conduct the investigation. The letter further indicated that Andrus believed that Gordon's provided answers were "partial answers" and clarified that Request 1 sought Gordon's client file from the case. The letter made three additional requests for information as to billing and files pertaining to Gordon's representation of the client, with a deadline of May 10, 2021, specifically requesting the following information:

  - Request 5: a confirmation that the time entries in the billing vouchers submitted to the Commission were performed by the individuals listed for the entries;

  - Request 6: a clarification as to why Gordon had been "unable to provide … copies of correspondence sent to [his client]" when they were requested in conjunction with the PCR case of the client and Gordon's file retention policy; and

  - Request 7: an explanation as to why Gordon had not complied with multiple court orders that he provide copies of client trial files to the PCR attorney.

- On May 10, 2021, Gordon emailed Andrus requesting an extension of time and indicating that on May 7, 2021, he had asked the Maine Board of

Overseers of the Bar questions as to what materials he could provide to the Commission without violating attorney-client privilege and was awaiting their reply.

- The same day, Andrus responded that he would not grant Gordon an extension of time and would issue a decision shortly.

- On May 11, 2021, Gordon informed the Commission that he had received a response from the Board of Overseers and that he would be retaining counsel going forward in connection with the investigation.

- On May 13, 2021, Gordon's counsel contacted Andrus, requesting further information as to what the Commission was seeking and indicating that it was his understanding that Gordon had not been in possession of the client file "for some time."

- Andrus replied by email on the same day, granting an extension until June 14, 2021, clarifying and renewing the requests for information that were made by letter on April 30, 2021, and noting that the Commission anticipated that Gordon would provide everything he could, with "appropriate, limited redactions."

- On June 14, 2021, Gordon's counsel emailed a letter to Andrus responding to the Commission's requests but not providing any of the requested documents. The letter answered the requests as follows:

  o As to Requests 1 through 4: Gordon believed he had satisfactorily answered these questions and would not provide further responses unless specific requests were made by the Commission;

  o As to Request 5: Gordon did not have access to the requested vouchers and was not the person who had generated the vouchers, but if the Commission provided the vouchers, Gordon would be able to provide additional detail;

  o As to Request 6: "Gordon does not know what happened to the file. . . . There is the possibility the file left the office with [the attorney

who] worked on the appeal in this matter. . . . [The firm] has retained every file since they opened";

- o As to Request 7: "Gordon . . . did not realize [the PCR attorney] wanted the other [client] files. . . . [W]hen it became clear to [Gordon] that [the PCR attorney] wanted the other files as well, he provided them to [the PCR attorney]."

- At multiple times after June 14, and before June 21, 2021, Andrus and Gordon's counsel spoke concerning the investigation.

- On June 21, 2021, Andrus emailed Gordon's counsel indicating that the Commission still believed that Gordon's responses to the requests were lacking and that unless Gordon provided the information immediately, he would be suspended the following day.

- On June 22, 2021, Andrus contacted Gordon's counsel in one last attempt to get any documents from Gordon before suspending him.

- Later that day, Gordon's counsel contacted Andrus to inform him that he believed that Gordon was sending along some materials but that he was not sending certain kinds of materials because they were "confidential work product." The Commission never received any of the referenced documents.

[¶7] Andrus never received documents that were responsive to the Commission's requests, any clear explanation of why Gordon had been unable to recover or share the requested files, or a release from Gordon to enable the Commission to seek the files on its own. Ultimately, Andrus issued a decision on June 22, 2021, suspending Gordon from the Commission's rosters, with an

8

effective date of July 1, 2021.[4]

[¶8]  On July 21, 2021, Gordon timely submitted a written statement requesting that his suspension be lifted, or alternatively taking an intra-agency appeal of Andrus's decision under the Commission's rules.  4 M.R.S. § 1804(3)(J) (2024); 94-649 C.M.R. ch. 201, § 4(1)(B) (effective Aug. 21, 2011). After a hearing, the presiding officer in the intra-agency appeal issued a recommended decision finding that Gordon had failed to provide any of the documents requested by the Commission and that Gordon had not satisfactorily answered the requests.  On September 28, 2022, a quorum of the Commission's commissioners considered the recommended decision and adopted it as the final agency action, with minor modifications that did not change its effect.

[¶9]  On October 19, 2022, Gordon filed a Rule 80C petition for judicial review of the Commission's decision to the Superior Court, and on September 19, 2023, the court issued a judgment affirming the Commission's decision.  *See* M.R. Civ. P.  80C.

---

[4] Since Gordon's suspension took effect, Gordon and Andrus have had continued communications, and Gordon has been repeatedly notified that if he supplies the documents requested by the Commission in the investigation, or explains why he cannot supply them, he will be eligible to be reinstated immediately.

## II. DISCUSSION

[¶10]  Gordon appeals to us from the judgment of the Superior Court on his Rule 80C petition.  Gordon asserts generally that the Commission's decision to suspend him was arbitrary or capricious.[5]

[¶11]  In evaluating the Commission's decision, "we assess whether the adjudicator's decision was arbitrary or capricious based on the record before it."  *AngleZ Behav. Health Servs. v. Dep't of Health and Hum. Servs.*, 2020 ME 26, ¶ 23, 226 A.3d 762.  The arbitrary-and-capricious standard is high: "we will not find that an administrative agency has acted arbitrarily or capriciously unless its action is willful and unreasoning and without consideration of facts or circumstances."  *Id*. (quotation marks omitted).  "Our review of state agency decision-making is deferential and limited," and we do not substitute our judgment for that of the agency on questions of fact.  *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128.

---

[5] Gordon phrases his arguments on appeal as being concerned with the decision of the Superior Court—the first being that the "[c]ourt abused its discretion in upholding the [Commission's] decision" because it was "arbitrary" and the second being that the Superior Court erred as a matter of law in upholding the Commission's decision, because it was "arbitrary" and "subjective."  "In an appeal from a Superior Court judgment on a Rule 80C petition, we review the underlying administrative agency decision directly for abuse of discretion, errors of law, or findings unsupported by substantial evidence in the record."  *Ouellette v. Saco River Corridor Comm'n*, 2022 ME 42, ¶ 8, 278 A.3d 1183 (quotation marks omitted).  Accordingly, we do not separately review the decision of the Superior Court but consider the arguments as addressing the Commission's decision.

10

[¶12]  At the evidentiary hearing, the Commission presented evidence that information concerning issues with Gordon's performance and billing had been raised to the Commission and did exist.  Evidence was presented that, in connection with the Commission's investigation, Andrus had repeatedly made requests to Gordon for documents concerning these issues and, while Gordon gave partial answers to some of the questions, he never supplied documents responsive to the requests.  Evidence was presented that supported Andrus's authority to commence the investigation and that the investigation was appropriate.  94-649 C.M.R. ch. 2, § 2(2) (effective Sept. 17, 2015).  Evidence was presented that suggested that Gordon's failure to turn over the requested documents was in violation of the Commission's rules and that his compliance would not have violated attorney confidence rules.  94-649 C.M.R. ch. 2, § 2(2) (effective Sept. 17, 2015); M.R. Prof. Conduct 1.6.  Evidence was presented that justified the Commission's suspension of Gordon for his failure to comply with the Commission's rules.  94-649 C.M.R. ch. 2, § 6 (effective Sept. 17, 2015).

[¶13]  In the decision eventually adopted by the Commission, the hearing officer "carefully analyzed the evidence presented and explained his ruling." *AngleZ*, 2020 ME 26, ¶ 26, 226 A.3d 762.  The evidence suggests that Gordon refused to comply with the Commission's requests despite their being made

within the Commission and Andrus's authority, and that no rule prevented Gordon from complying. Thus, the Commission's adoption of the hearing officer's recommendation was neither arbitrary nor capricious; rather it was clearly supported by the evidence. The Commission's decision reflects no erroneous findings of fact or abuse of discretion, and the record does not suggest that the decision was "willful and unreasoning and without consideration of facts or circumstances." *Id.* ¶ 23 (quotation marks omitted).

The entry is:

Judgment affirmed.

---

Verne E. Paradie, Jr., Esq., Paradie, Rabasco, & Seasonwein, P.A., Lewiston, and Patrick Gordon, pro se (orally), for appellant Patrick Gordon

Aaron M. Frey, Attorney General, and Megan M. Hudson-MacRae, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Maine Commission on Public Defense Services

Kennebec County Superior Court docket number AP-2022-37
FOR CLERK REFERENCE ONLY