MAINE SUPREME JUDICIAL COURT                                  Reporter of Decisions
Decision:      2026 ME 5
Docket:        Som-24-402
Argued:        April 10, 2025
Decided:       January 29, 2026

Panel:         STANFILL, C.J., and MEAD, CONNORS, DOUGLAS, and LIPEZ, JJ., and HORTON, A.R.J.*

XINXIU TINA HOGAN

v.

KENNEBEC VALLEY COMMUNITY COLLEGE

CONNORS, J.

[¶1]  XinXiu "Tina" Hogan appeals from a judgment entered by the Superior Court (Somerset County, *Stokes, A.R.J.*) on her complaint pursuant to M.R. Civ. P. 80B, affirming her dismissal from the Respiratory Therapy Program (RT Program) at Kennebec Valley Community College (KVCC) and dismissing as duplicative her two appended independent claims, *see* M.R. Civ. P. 80B(i), one under 42 U.S.C.A. § 1983 (Westlaw through Pub. L. No. 119-59) for a violation of procedural due process and the other for unlawful educational discrimination, *see* 5 M.R.S. § 4601 (2025)*.*  We affirm.

---

* Justice Horton sat at oral argument and participated in the initial conference while he was an Associate Justice and, as directed and assigned by the Chief Justice, is now participating in this appeal as an Active Retired Justice.

## I. BACKGROUND

[¶2]   The following facts are supported by evidence in the record. *See Raposa v. Town of York*, 2020 ME 72, ¶ 2, 234 A.3d 206.

### A.     The Underlying Facts

[¶3]   Hogan was a student in KVCC's RT Program from 2017 to 2022. During her final year in the program, Hogan was enrolled in a clinical course in which she performed supervised work at several local hospitals.   Over the course of the 2021-2022 school year, several concerns arose among KVCC faculty and clinical site supervisors about Hogan's performance.

[¶4]   First, on November 2, 2021, the Director of Respiratory Care at Redington Fairview General Hospital in Skowhegan emailed the RT Program Director of Clinical Education "to share some concerns with [Hogan's] performance."   The Director of Respiratory Care discussed Hogan's difficulty giving a patient an inline nebulizer treatment and conducting a BiPAP (bilevel positive airway pressure) check.

[¶5]   Second, on February 28, 2022, a respiratory therapist at Franklin Memorial Hospital sent an email to the Director of Clinical Education stating that Hogan "was really struggling with her skills in the clinical setting."   The email reported that the therapist working with Hogan the previous week "ha[d]

some big concerns as [Hogan] [was] supposed to be graduating soon."  The Director of Clinical Education reached out to the therapist, who stated that Hogan's clinical skills were concerning for various reasons, including that Hogan was, in the Director's words, "listening for breath sounds in incorrect places."  The therapist also reported that Hogan had urged the therapist to fill out a new evaluation form because Hogan had been displeased with her score.

[¶6]  Third, on March 17, 2022, a supervisor in the Respiratory Care Department of MaineGeneral Medical Center sent an email to RT Program faculty reporting that its clinical site had "had many issues" with Hogan that day.  The supervisor stated that Hogan was "unsafe with patients and very confrontational with staff."  The supervisor also reported that Hogan had required "prompt[ing] on all her treatments and inhalers," had not "know[n] the procedure for a blood gas and unsafely handl[ed] a needle," and had "bec[ome] very upset and unprofessional."  In addition, the supervisor stated that Hogan had become argumentative with MaineGeneral staff over a low grade and eventually had to be asked to leave the site.  The supervisor concluded that "[c]linically[,] I do not think [Hogan] is ready to do any patient care on her own."  In addition to sending this email, the supervisor filled out a "Clinical Incident/Accident Report," which is a KVCC RT Program form,

describing Hogan's "[a]ltercation with [a] staff member" over her evaluation score. The Director of Clinical Education was at MaineGeneral that same day and observed that Hogan employed "unsafe needle practices as evidenced by[] incorrect angle of needle in skin, not recognizing that needle had withdrawn from skin and attempting to re-stick patient with same needle, and not recognizing when to appropriately cap the needle."

[¶7]  On or around March 24, 2022, Hogan met with KVCC's Interim Dean of Students, the Director of Clinical Education, and the RT Program Director to discuss the March 17, 2022, incident at MaineGeneral. According to Hogan, the meeting concluded after the RT Program Director decided that the Director of Clinical Education would accompany Hogan to a clinical site where she would observe Hogan perform some competency tests; if Hogan passed the tests, she would return to her normal clinical work. On April 5, 2022, Hogan passed these tests, and on her evaluation, the Director of Clinical Education noted, "Tina, you did a nice job following the competency steps.  Good interpersonal relations." After Hogan passed the evaluation, the Director of Clinical Education sent her an updated schedule for the remainder of her clinical work.

[¶8]  On April 12, 2022, however, an Assistant Manager of Respiratory Medicine at Northern Light Eastern Maine Medical Center emailed the Director

of Clinical Education and the RT Program Director about concerns with Hogan's clinical performance. The Assistant Manager described two incidents. First, she stated that Hogan "attempted to obtain an ABG without removing the cap from the needle," adding that Hogan "took so long to even set up for the ABG that a 5-minute blood pressure cuff cycled twice." The Assistant Manager also stated that Hogan "tried to obtain the gas with the cap on and when the cuff was going off." Second, the Assistant Manager reported that Hogan failed to recognize that a cystic fibrosis patient was in "obvious [respiratory] distress" and was "audibly wheezing," explaining that Hogan did not pick up on clinical cues. This incident was recorded by clinical staff in a "Clinical Incident/Accident Report."

## B. The First Disciplinary Hearing

[¶9] On April 13, 2022, the Director of Clinical Education recommended in a letter that Hogan be dismissed from the clinical course. The letter summarized the reports from the hospital clinicians regarding Hogan's performance. The Director noted that three hospitals had stated that they would allow Hogan to perform clinical work only if supervised one-on-one by the Director herself. The Director explained, "As it is not feasible or appropriate

6

for me to remain 1:1 with [Hogan] for the remainder of the semester, I feel she should be dismissed from the class."

[¶10]  In a letter dated April 15, 2022, the Interim Dean informed Hogan that she had been placed on an interim suspension from the RT Program based on information that, on April 12, 2022, "patient safety was at risk under [her] care."  The letter explained that this conduct, "[i]f . . . accurate," "would violate Sections 501, III, B16 of the [Student Code of Conduct]," which forbids "any . . . conduct that threatens or endangers the health or safety of one's self or others."   This letter asked Hogan to meet with the Interim Dean on April 21, 2022; Hogan attended this meeting.

[¶11]  After the meeting, on April 29, 2022, the Interim Dean sent another letter to Hogan dismissing her from the RT Program.  The letter stated that the Interim Dean had "determined that it is more probable than not that on or about March 17th, 2022, and April 12th, 2022, [Hogan] endangered patient safety"; that this misconduct violated section 501(III)(B)(16) of the Student Code of Conduct; and that the dismissal was a sanction for this violation.

[¶12]  Pursuant to the Code of Conduct, Hogan requested a "Stage Two" proceeding to review the Interim Dean's decision.  Stage Two proceedings

consist of review by a disciplinary committee at an evidentiary hearing.[1] Hogan received evidence of the allegations against her from KVCC on May 13, 2022, three days prior to the committee hearing. Hogan claims that this is when she first learned about many of the concerns about her performance.

[¶13] On May 16, 2022, the committee convened a hearing attended by the committee members, the Interim Dean, and Hogan, as well as the Director of Clinical Education, who served as a witness. In a letter dated that day, the committee upheld the Dean's decision to dismiss Hogan from the RT Program, stating, "Based upon the information that the Committee received, the Committee determined that it is more probable than not that patient safety was compromised under your care and that these incidents violated Section 501, III, B16 of the Maine Community College's Code of Conduct."

## C.     The First Superior Court Proceeding and the Second Disciplinary Hearing

[¶14] Hogan filed in the Superior Court an appeal of the committee's decision pursuant to Rule 80B of the Maine Rules of Civil Procedure. On May 10, 2023, the Superior Court (Somerset County, *Mills, A.R.J.*) found the

---

[1] According to the Code of Conduct, students may challenge a sanction for a violation in a Stage Two proceeding; these hearings are heard by a disciplinary committee consisting of three to five members, each appointed by the college president. Following a hearing, the committee "may impose any appropriate sanction up to and including dismissal."

administrative record insufficient for appellate review and vacated the decision; the court ordered the committee to "conduct a new hearing and to make a final decision that provides findings of fact based on a reviewable record."

[¶15]  The committee held a new hearing on July 31, 2023, in which it received evidence from the Interim Dean and from Hogan.[2]  KVCC shared its evidence with Hogan six days prior to that hearing.  In a letter dated August 9, 2023, the committee upheld the Dean's finding that Hogan had violated the Code of Conduct and the sanction of dismissal from the RT Program.  The committee made the following explicit findings:

> Specifically, the committee concluded that it was more probable than not that your conduct, on several occasions, spanning two semesters, dating November 2021, as well as February, March, and April 2022, disregarded the welfare, health or safety of the College community.
>
> The emails and related incident reports, all written contemporaneously, describe conduct that "threatens or endangers the health or safety of others" such as using aggressive measures to wake a patient; unsafe needle practices; failing to recognize a patient in obvious distress; and arguing with site staff about clinical evaluations and scores.  We found the emails and reports to be credible because of the detail provided by hospital staff. We also found the notices—after the fact—from three different hospitals (Central Maine Medical Center; Maine General; and Northern Light Health) that they would not allow you back on

[2] By this point, the Interim Dean's title had changed to the Dean of Student Affairs and Enrollment.

site without one-on-one faculty supervision credible and compelling.

The materials and records you supplied did not speak contemporaneously, or at all, to the conduct ascribed to you. The materials that were directly related were either reflective, after the fact, or contradictory to the contemporaneous record. We found the materials you provided in your testimony to be less credible than those supplied by multiple, independent clinical sites.

Despite your contention that these reports were the byproduct of racism, we did not find any evidence of racism, discrimination, or personal animosity in any of the provided documentation. Further, in your evaluations of site preceptors, you did not once mention discrimination as the reason for your scores.

[¶16]  The committee rejected the suggestion that Hogan's conduct constituted an academic rather than a disciplinary issue, stating, "The committee believes the timing (i.e., late in academic career), severity, nature, and number of incidents represents negligent behavior that is not simply an artifact of a student learning to perform clinical duties."

## D.    The Second Superior Court Proceeding

[¶17]  In September 2023, Hogan filed in the Superior Court a two-count complaint entitled "Complaint for Review of Final Governmental Action and for Violation of Due Process Rights."  She filed an amended complaint adding a count the following month.

[¶18] The only defendant named in the complaints is KVCC. In Count I, the Rule 80B count, Hogan alleges that KVCC's decision to dismiss her from the program "was made without adherence to KVCC's policies and procedures; was arbitrary and capricious; and was unsupported by the competent evidence in the record."

[¶19] Count II, containing a caption listing 42 U.S.C.A. § 1983, alleged that Hogan was dismissed without procedural due process because KVCC did not apply the correct provisions of its policies in her review and the first disciplinary process in 2022 had lacked adequate notice and a reviewable record.

[¶20] Count III alleged a violation of 5 M.R.S. § 4601,[3] asserting that Hogan was discriminated against because of her race and national origin.

[¶21] In her claim for relief, Hogan sought reversal of her dismissal; an injunction against KVCC from preventing her from completing the RT Program;

---

[3] Section 4601 is contained within the Maine Human Rights Act and provides, "The opportunity for an individual at an educational institution to participate in all educational, counseling and vocational guidance programs, all apprenticeship and on-the-job training programs and all extracurricular activities without discrimination because of sex, sexual orientation or gender identity, a physical or mental disability, ancestry, national origin, race, color or religion is recognized and declared to be a civil right." 5 M.R.S. § 4601. Title 5 M.R.S. § 4602 (2025), entitled "Unlawful educational discrimination," states in relevant part that "[i]t is unlawful educational discrimination in violation of this Act, on the basis of . . . national origin" to "[e]xclude a person from participation in, deny a person the benefits of, or subject a person to, discrimination in any academic, extracurricular, research, occupational training or other program or activity."

expungement in her academic record of having endangered patient safety and of having been dismissed; compensatory damages; and costs, including attorney fees pursuant to 42 U.S.C.A. § 1988 (Westlaw through Pub. L. No. 119-59) and 5 M.R.S. § 4614 (2025).

[¶22] Because she appended claims additional to her Rule 80B appeal in her amended complaint, Hogan filed motions to specify the future course of the proceedings with those claims. *See* M.R. Civ. P. 80B(i) (requiring the plaintiff to file a motion to specify when alleging independent claims additional to the administrative appeal). In her amended motion to specify the course of the proceedings, Hogan asked the court to sever Count I from Counts II and III, arguing that whether she was deprived of her property interest in her education without due process and whether KVCC engaged in unlawful educational discrimination "c[ould] be resolved only after an evidentiary hearing before the Superior Court." She included no further argument or explanation.

[¶23] In November 2023, KVCC moved to dismiss the purported independent claims, Counts II and III, arguing that they were duplicative of Count I. KVCC argued that if the independent claims were not dismissed, the court should hear the Rule 80B claim before identifying the process by which

12

the independent counts would be heard.  In an order dated January 22, 2024, the court (*Stokes, A.R.J.*) dismissed Count II, stating, inter alia, that "[t]he Rule 80B appeal provides an adequate avenue for judicial review and relief."  As to Count III, the court stated:

> The court is not as certain with respect to Count III, alleging unlawful education discrimination in violation of the Maine Human Rights Act. It is true that the Amended Complaint alleges that Ms. Hogan was discriminated against and harassed based on her national origin "[w]hile attending the KVCC Respiratory Therapy Program." It is also true that the Amended Complaint seems to be using those factual allegations to support the claim that the disciplinary committee's most recent decision to dismiss Hogan from the respiratory therapy program was based on or influenced by bias and/or discrimination against her, a claim that would be encompassed within the Rule 80B appeal.
>
> It is at least arguable at this stage of the proceedings that Ms. Hogan is asserting a claim of discrimination while she was in the respiratory therapy program independent of and separate from the appeal of the dismissal decision.  At this time, the court will deny the motion to dismiss Count III.

The Court then stated, "On the other hand, the court agrees with KVCC that the Rule 80B appeal should be addressed and resolved first."  Accordingly, the amended motion to specify the course of proceedings was denied, and the court ordered that "[f]urther action on Count III is deferred until after the court resolves Count I."

[¶24]  After briefing on the Rule 80B appeal was completed in August 2024, the court denied the appeal and affirmed the committee's decision, reasoning that, contrary to Hogan's argument, KVCC's choice to treat the matter as a potential disciplinary matter rather than an academic issue and to rely on the Code of Conduct in dismissing Hogan "was not an error of law, nor was it arbitrary, capricious, or an abuse of discretion." The court also rejected Hogan's arguments regarding alleged due process deficiencies.

[¶25]  As to Count III, the court stated:

> The court wishes to address Count III of the Amended Complaint, which alleges unlawful education discrimination under State law. This count remains pending, as it survived KVCC's motion to dismiss as being duplicative of the Rule 80B appeal. In her Rule 80 brief, the Plaintiff made no mention of any claim the Dean or the Disciplinary Committee was racially biased against her in dismissing her from the Respiratory Therapy Program. Any claim of racial bias on the part of the decision-maker or that the decision was based on racially biased information, would most certainly be grounds for a reviewing court to vacate that decision, and would provide the Plaintiff with the precise relief she is seeking.
>
> The court has reviewed the Administrative Record in detail and can find no evidence of any kind that racial bias played any part in the proceedings below, or the events giving rise to those proceedings.
>
> In her reply brief, the Plaintiff explains that she did not address the issue of discrimination in her main Rule 80B brief because she was following the court's order of January 22, 2024,

that "[f]urther action on Count III is deferred until after the court resolves Count I [Rule 80B]."

Apparently, the Plaintiff has misconstrued the court's January 22, 2024 order. Nothing in that order suggests that evidence of racial bias in the Administrative Record, could not or should not be brought to the court's attention in the parties' principal briefs on Count I.

From the order of January 22, 2024, it should have been clear that the court was uncertain as to what to do with Count III. Thus, it would have been helpful to the court had the Plaintiff identified where, in the Administrative Record, there was evidence of racial bias. The Amended Complaint uses the same factual allegations in Counts I and III. Based on the Court's comprehensive review of the Administrative Record, it concludes that Count III is duplicative of Count I. Since the Count I, Rule 80B appeal, will be denied, Count III will also be dismissed.

Having disposed of all the claims, the court entered final judgment, and Hogan timely appealed.

## II. DISCUSSION

### A. Count I: The court did not err in affirming KVCC's decision.

[¶26] In the Rule 80B context, when the Superior Court does not take additional evidence and instead makes its decision entirely based on the administrative record,[4] we "directly examine the record developed before the

---

[4] The taking of additional evidence before the Superior Court is the exception rather than the norm because on appeal, we ordinarily review an administrative decision based on the record that was presented to the administrative decision maker. *See* M.R. Civ. P. 80B(f). Hence, to take additional evidence before the Superior Court, the party seeking to supplement the record must file a motion to do so containing a "detailed statement, in the nature of an offer of proof, of the evidence that the party

[government agency] in the same manner the Superior Court did for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *Lane Constr. Corp. v. Town of Washington*, 2008 ME 45, ¶ 29, 942 A.2d 1202. "The party seeking to overturn the decision bears the burden of persuasion." *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024.

[¶27]   Before us, Hogan advances two arguments in support of her Rule 80B appeal: (1) the committee incorrectly applied the Code of Conduct, treating her conduct as a disciplinary matter, instead of applying the RT Handbook and treating the conduct as an academic issue; and (2) the committee's process culminating in Hogan's dismissal was unfair. We address each argument seriatim.

---

intends to introduce at trial. That statement shall be sufficient to permit the court to make a proper determination as to whether any trial of the facts as presented in the motion and offer of proof is appropriate under this rule and if so to what extent. After hearing, the court shall issue an appropriate order specifying the future course of proceedings." M.R. Civ. P. 80B(d). The "purpose of such a trial is not to retry the facts but rather to permit the court to obtain facts that are not present in the [administrative] record." *Silsby v. Belch*, 2008 ME 104, ¶ 6, 952 A.2d 218. A Rule 80B appeal is a proper venue to address a claim of bias by the administrative decision maker, *see Adelman v. Town of Baldwin*, 2000 ME 91, ¶ 7, 750 A.2d 577, and typically, motions to take additional evidence are based on claims that the administrative decision maker was biased as reflected by facts not contained in the administrative record, such as ex parte communications. *See Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743 A.2d 237. Hogan filed no such motion.

### 1. KVCC's decision to apply the Code of Conduct was not arbitrary and capricious.

[¶28] "An agency's action can be arbitrary and capricious if it was not the product of the requisite processes." *Lane Constr. Corp.,* 2008 ME 45, ¶ 32, 942 A.2d 1202 (quotation marks omitted). "[W]e assess whether the adjudicator's decision was arbitrary or capricious based on the record before it. The arbitrary-and-capricious standard is high: we will not find that an administrative agency has acted arbitrarily or capriciously unless its action is willful and unreasoning and without consideration of facts or circumstances. Our review of state agency decision-making is deferential and limited, and we do not substitute our judgment for that of the agency on questions of fact." *Gordon v. Me. Comm'n on Pub. Def. Servs.,* 2024 ME 59, ¶ 11, 320 A.3d 449 (citation and quotation marks omitted).

[¶29] Before this Court, Hogan does not claim that the Code of Conduct or the RT Handbook constitute a binding contract; instead, she anchors her claim on the requirements of due process and fairness, so we do the same. Regardless of whether a procedure published and communicated by a public educational institution to its students constitutes a binding contract, and regardless of whether Hogan may invoke constitutional principles of

procedural due process,[5] the failure of a public educational institution to adhere to its own rules can constitute arbitrary and capricious conduct. *See Coveney v. President & Trs. of Coll. of Holy Cross,* 445 N.E.2d 136, 138 (Mass. 1983) (stating that even a "private university, college, or school may not arbitrarily or capriciously dismiss a student"); Paul Smith, *Due Process, Fundamental Fairness, and Judicial Deference: The Illusory Difference Between State and Private Educational Institution Disciplinary Legal Requirements*, 9 U.N.H. L. Rev. 443, 453 (2011) (noting that in the student disciplinary context, the doctrines of constitutional due process and fundamental fairness "lack significant practical distinctions when they are applied").

[¶30] Hogan claims that it was improper for KVCC to apply the Code of Conduct to her case because the provisions relied on to suspend and to dismiss her "d[id] not relate to the facts at hand" because these provisions do not apply to protect "patients in the clinical setting." She argues that the Code of Conduct addresses disciplinary issues and that her case involved academic issues that should have instead been addressed in accordance with the RT Handbook.

[¶31] A fundamental flaw in Hogan's argument is that she has not argued before us that the factual findings of the committee were not supported by

---

[5] As noted *infra* n.9, Hogan may have lacked a constitutionally protected property interest in her continued participation in the RT Program.

substantial evidence. The committee found credible evidence in the record that Hogan engaged in conduct that "threaten[ed] or endanger[ed] the health or safety of . . . others" in violation of the Code of Conduct, including "using aggressive measures to wake a patient; unsafe needle practices; failing to recognize a patient in obvious distress; and arguing with site staff about clinical evaluations and scores." The committee determined that "the timing (i.e., late in academic career), severity, nature, and number of incidents represents [*sic*] negligent behavior that is not simply an artifact of a student learning to perform clinical duties," thus concluding that Hogan's conduct did not constitute a merely academic issue. Thus, the committee's unchallenged fact findings are that Hogan's conduct reflected negligence rather than learning or academic deficits.

[¶32] Given the nature of the clinical site reports in the record, it was not unreasonable for the committee to treat the matter as one involving misconduct subject to review under the Code of Conduct, which provides that its provisions apply "*in addition to* other College and System policies and regulations" (emphasis added). We disagree with Hogan's argument that that the Code of Conduct's references to actions affecting the "College community" or "members of its community" do not extend to the hospital staff and patients

she encountered during her clinical training. The Code of Conduct defines "College Community" as "any person or organization that attends, performs services for, is employed by, visits or otherwise uses the College." When a student interacts with hospital staff and patients as a part of a KVCC program, the hospital and patients interacting with the student are participating in that program and are thus attending, visiting, or using the College. In any event, misconduct reviewable under the Code of Conduct is not limited to misconduct directed toward Community members. The Code applies "to conduct, wherever it occurs" that, among other things, "involves a College or College-related activity"; in addition, the Code provides a non-exhaustive list of examples of misconduct, which includes "any other conduct that threatens or endangers the health or safety of one's self or others." Hence, KVCC could rationally choose to review Hogan's conduct under the Code of Conduct.[6]

---

[6] Hogan's dismissal was also at least arguably permissible under the RT Handbook. The RT Handbook allows for dismissal when KVCC receives reports of "[a]ny action or inaction by a student which jeopardizes the physical and/or emotional safety of a patient" and that report is reviewed by program faculty. The RT Program refers to these reports as "KVCC Critical Incident Reports." While Hogan points out that no "KVCC Critical Incident Reports" were filled out in this case, and the reports in the record are instead labeled "Clinical Incident/Accident Reports," the record shows that incidents were reported by hospitals and then reviewed by faculty, and that the review of these reports led to Hogan's dismissal. In other words, the procedure by which KVCC dismissed Hogan reflected the essence of the process prescribed by the RT Handbook.

Hogan additionally argues that that the Maine Community College System policy for Student Issues Arising at Clinical Affiliates (IACA) must be applied before the Code of Conduct. This argument fails for several reasons. First, because Hogan did not raise the argument until her reply brief, this argument is waived. *See Lincoln v. Burbank*, 2016 ME 138, ¶ 41, 147 A.3d 1165. Second, the IACA is

20

[¶33]  In sum, from the standpoint of our limited and deferential review of administrative decisions, we cannot say that the decision to dismiss Hogan from the RT program was arbitrary and capricious.  We cannot say that the committee's choices and ultimate decision were unreasoning and without consideration of the facts or circumstances.  *See Gordon*, 2024 ME 59, ¶ 11, 320 A.3d 449.  While Hogan argues that she passed her competency evaluations and that it was particularly unfair to dismiss her when she was so close to completing the RT program, given the broad language of the Code of Conduct and the committee's unchallenged findings based on evidence of endangerment to patient safety, it fell within KVCC's discretion to treat Hogan's actions as misconduct rather than a matter of academic deficit.[7]

---

not included in the administrative record and therefore cannot be considered.  *See* M.R. Civ. P. 80B(f) ("Except where otherwise provided . . . review shall be based upon the record of the proceedings before the governmental agency.").  Third, even if we were to consider the IACA, it provides that "students whose misconduct at clinical affiliates violates the [Code of Conduct] may, in addition to" the procedures outlined in the IACA, "also be subject to the procedures and sanctions of that Code."

[7]  Although Hogan did not make a substantial evidence argument, the committee's findings are supported by competent evidence in the record.  *See Adelman*, 2000 ME 91, ¶ 12, 750 A.2d 577 (stating that to vacate a governmental body's findings, the plaintiff "must demonstrate that no competent evidence supports" them).

**2.    Hogan waived any other Rule 80B argument challenging the committee's process; in any event, the committee's second hearing, following the Superior Court's remand, provided meaningful notice and opportunity to be heard.**

[¶34]   To the extent that Hogan seeks to challenge the committee's decision pursuant to Rule 80B based on any other alleged flaw in its review process, that argument is waived.  *See New Eng. Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 58 (Me. 1988) ("Issues not raised at the administrative level are deemed unpreserved for appellate review," even as to "issues implicating constitutional questions").[8]

[¶35]   Even if any argument other than Hogan's claim that KVCC should have addressed her conduct under the RT Handbook rather than the Code of

---

[8]  In the second hearing before the committee, Hogan submitted over five hundred pages of materials to support her position.  These materials are not clearly organized and are difficult to follow.  If there is a claim of a process violation brought before the committee contained somewhere in these materials that we have overlooked, we note that the burden remained on Hogan throughout these proceedings to identify the necessary predicates for her arguments, and she has not identified anything in the record in any of her briefing before us indicating that she made any process argument before the committee other than that KVCC should have applied the RT Handbook, not the Code of Conduct, to address its concerns about her conduct.  In response to KVCC's argument that any additional due process arguments were not preserved, Hogan stated in her reply brief before us that because the committee hearing was not recorded or transcribed, "it cannot be said that the matter of [Hogan's] due process rights were not discussed."  This statement misapprehends applicable law. The burden is on Hogan to identify a reviewable flaw in the administrative proceedings.  Hogan has not indicated that there is anything in the administrative record reflecting that she asked that the hearing be recorded or transcribed.  At the Superior Court level, although normally the appellant is responsible for the filing of the administrative record with the Superior Court in a Rule 80B appeal, *see* M.R. Civ. P. 80B(e)(1), the Superior Court in this matter ordered that KVCC file the record.  If Hogan thought that the record was incomplete, she never so claimed in court, and she would have had to file a motion to correct the record, which she did not do. *See* M.R. Civ. P. 80B(e)(2).  Had Hogan believed that the administrative record required expansion, as noted above, *supra* n.4, it was incumbent upon her to file a motion for trial with the Superior Court, which she also did not do. *See* M.R. Civ. P. 80B(d).

Conduct were not waived, Hogan misdirects her focus. Her argument is largely based on the claim of procedural flaws relating to the committee's *first* hearing. She notes, for example, that the letter placing her on an interim suspension and notifying her about a meeting with the Interim Dean a few days later identified the April 12 incident, while the letter dismissing her from the RT Program following that meeting mentions both the March 17 and April 12 incidents. Following a hearing, the committee upheld Hogan's dismissal, but the Superior Court concluded that the committee's findings were inadequate for review and remanded the matter to the committee, ordering it to provide a *second* hearing. On remand, the committee held a second hearing on July 31, 2023, and issued new findings, and it is the decision emanating from this second hearing that Hogan challenges before us in her Rule 80B appeal.

[¶36] Prior to the second hearing, Hogan had notice of all the clinical reports on which the committee relied in reaching its decision. Hogan had a full opportunity to be heard in that second hearing and filed voluminous materials in support of her position. Hence, Hogan has not met her burden to show that she was not provided with meaningful notice and an opportunity to be heard. *See Martin v. Unemployment Ins. Comm'n*, 1998 ME 271, ¶¶ 15-16, 723 A.2d 412

("The essential requirement of due process in the administrative context is that a party be given notice and an opportunity to be heard.").

[¶37]　Additionally, again except for the argument discussed above regarding the Code of Conduct versus the RT Handbook, Hogan has not articulated how she was prejudiced by the process used by KVCC in the second hearing, i.e., how any flaw in that process could have affected the committee's decision.　She does not argue, for example, that had KVCC provided more process in some identified way, the result could have been different.　We have repeatedly held that such prejudice must be shown to prevail on appeal when a party claims that the procedure below was tainted by a lack of procedural due process.　*See Bryant v. Town of Wiscasset*, 2017 ME 234, ¶ 16, 176 A.3d 176 (rejecting a claim of administrative due process given the board's remedial action and the lack of prejudice to the plaintiffs); *Fitanides v. City of Saco*, 2015 ME 32, ¶¶ 20-22, 113 A.3d 1088 (rejecting a claim where the plaintiff showed no prejudice from a claimed denial of due process).

[¶38]　In sum, Hogan's Rule 80B appeal fails because she did not meet her burden to show that KVCC's decision to dismiss her from the RT Program was arbitrary or capricious or that the disciplinary process resulting in her dismissal otherwise violated her right to fundamental fairness.

**B.    Count II: Hogan's § 1983 argument fails because (1) Count II fails to state a claim and (2) the Superior Court did not abuse its discretion in dismissing the claim under our exclusivity rule.** [9]

[¶39]  Count II purports to allege a claim under 42 U.S.C.A. § 1983, which establishes a civil cause of action for the deprivation of federal civil rights.[10]

---

[9] Hogan's § 1983 claim likely suffers from other infirmities.  First, Hogan sued KVCC itself and not any individual official of KVCC.  Although KVCC did not raise this point, KVCC might not be a "person" within the meaning of § 1983.  States or governmental entities that are considered "arms" of the state for Eleventh Amendment purposes are not "persons" that may be sued under § 1983.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 70-71 (1989).  The Maine Community College System is an *instrumentality* of the state, 20-A M.R.S. § 12702 (2025), but given the state of the record, we cannot rule definitively that KVCC is an *arm* of the state for § 1983 purposes.  *Compare Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 140 (2d Cir. 2015) (concluding that a community college was not an arm of the state entitled to sovereign immunity) *with Griner v. Se. Cmty. Coll.*, 95 F. Supp. 2d 1054, 1060-61 (D. Neb. 2000) (concluding that a Nebraska community college was not an arm of the state and listing decisions in which courts found that a public educational body or institution had immunity and other decisions in which different courts found no immunity.)

Second, it is doubtful that Hogan had a protectable property interest in her continued enrollment in the RT program.  (Hogan did not allege that her dismissal from the RT program deprived her of a liberty interest, nor has she developed such an argument before us.  *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82 (1978); *Doe v. Purdue Univ.*, 928 F.3d 652, 661 (7th Cir. 2019), *holding modified on other grounds by Doe v. Samford Univ.*, 29 F.4th 675 (11th Cir. 2022).)  Most relevant case law concludes that there is no protectable property interest in attending a specific educational program.  *See Arundar v. DeKalb Cnty. Sch. Dist.*, 620 F.2d 493, 494 (5th Cir. 1980); *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 27 (5th Cir. 1997); *Seamons v. Snow*, 84 F.3d 1226, 1234-35 (10th Cir.1996); *Stafford Mun. Sch. Dist. v. L.P.*, 64 S.W.3d 559, 563 (Tex. App. 2001); *Mitchell v. Beaumont Indep. Sch. Dist.*, 2006 WL 2092585, at 12 (E.D. Tex. July 25, 2006); *Mitchell v. Beaumont Indep. Sch. Dist.*, 2006 WL 2092585, *12 (E.D. Tex. 2006).  *But see Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 403 (M.D. Pa. 2013) (concluding that the plaintiff had a protectable property interest in her continued participation in a nurse anesthesia program at a state university).

[10] Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."  42 U.S.C.A. § 1983.

**1.** **Count II fails to state a claim as a matter of law because Hogan received all the process due to her under federal law.**

[¶40] As a threshold matter, because, as noted above, the administrative record reflects that KVCC's disciplinary process provided meaningful notice and an opportunity to be heard, *see supra* ¶ 36, it satisfied the requirements of the federal Due Process Clause. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85 (1978) (holding that a student was "awarded at least as much due process as the Fourteenth Amendment requires" because the "school fully informed respondent of the faculty's dissatisfaction with her clinical progress and the danger that this posed to timely graduation and continued enrollment" and the "ultimate decision to dismiss the respondent was careful and deliberate"); *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988) ("Notice and an opportunity to be heard have traditionally and consistently been held to be the essential requisites of procedural due process.").

[¶41] Setting aside what was reflected in the administrative record and focusing on the allegations in the operative complaint, when the challenged decision of an administrative body is "random and unauthorized" such that pre-deprivation process is impractical, post-deprivation procedures can satisfy federal due process requirements. *Parratt v. Taylor*, 451 U.S. 527, 538-41 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327,

330-31 (1986); *see Moreau v. Town of Turner*, 661 A.2d 677, 680 (Me. 1995) (concluding that a dismissed town employee's failure to avail himself of adequate redress available through Rule 80B's post-deprivation administrative process precluded him from pursuing an independent § 1983 action arising from a two-day suspension without pay).

[¶42]  The alleged defective procedure resulting in Hogan's dismissal would, if proved, be such random and unauthorized conduct, and her ability to challenge her dismissal after the fact under Rule 80B constitutes adequate process as a matter of law.  *See Tominsky v. Ogunquit*, 2023 ME 30, ¶ 13, 294 A.3d 142 ("[T]o the extent that Tominsky claims a violation of his procedural due process rights, the judicial review provided by Rule 80B bestows all the post-deprivation process that is due."); *Antler's Inn & Rest., LLC v. Dep't of Pub. Safety*, 2012 ME 143, ¶ 14, 60 A.3d 1248 ("[W]hen . . . a municipality or agency's decision is reviewable pursuant to M.R. Civ. P. 80B . . . that process provides the exclusive process for judicial review unless it is inadequate." (quotation marks omitted)).

[¶43]  Thus, even if the committee's hearing process had not satisfied federal due process standards for administrative disciplinary actions, Hogan would still lack a viable § 1983 claim because the relevant process had not yet

been completed at the time of her dismissal, and her Rule 80B avenue provided

sufficient post-deprivation process to satisfy federal due process

requirements.[11]

## 2.  Count II also falls under the exclusivity rule.

[¶44]  The Superior Court dismissed Count II based on our exclusivity

rule, which provides that "'[r]esort to the courts by alternative routes [from

---

[11]  Hogan argues that with respect to her initial suspension, she was entitled to a pre-deprivation process that she did not receive and, therefore, a § 1983 claim survives as to that specific deprivation. In *Goss v. Lopez*, 419 U.S. 565, 576, 581 (1975), a case involving public high school students, the Supreme Court held that before a school can suspend a student for disciplinary reasons for more than "a trivial period"—with ten days deemed not trivial—the student is entitled to some limited process. Here, Hogan was suspended for a six-day period, from April 15 to April 21, 2022, before she was given an opportunity to respond.  The First Circuit has determined that the requirement for a rudimentary pre-deprivation process applies in the public university setting. *See Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 65-66 (1st Cir. 2019).  Even if we were to accept that a viable claim might theoretically exist entitling Hogan to pre-deprivation process prior to this six-day suspension, however, Hogan did not assert such a claim.  She argues that she "clearly stated her due process rights were violated."  This is correct, but there are two problems with this argument.  First, in her operative complaint, the only allegations of deficiencies in the 2022 disciplinary process centered on KVCC's reliance on the Code of Conduct and inadequate notice, not the suspension prior to the hearing. Second, when arguing to the Superior Court why Count II should not be dismissed, Hogan made no mention of the fact that Count II included a claim based on a pre-deprivation process for the six-day suspension.  Rather, she argued, conclusorily, only that Count II should not be dismissed because whether she "was deprived of her property interest in her education without due process" could "be resolved only after an evidentiary hearing," and that the Dean's actions were distinct and unreviewable, to which KVCC reasonably responded that the Dean's actions were not distinct in that the Dean did not exercise authority as an individual in dismissing Hogan from the program. *See Farley v. Town of Washburn*, 1997 ME 218, ¶ 5, 704 A.2d 347 (concluding that the plaintiff's failure to raise an issue before the Superior Court precluded review, noting that we "will consider an issue raised and preserved if there is sufficient basis in the record to alert the court and any opposing party to the existence of that issue").  Given that neither the allegations in the operative complaint nor the administrative record suggested any prejudice that could result in compensable damages under § 1983 from this six-day suspension or would otherwise alert the court and KVCC that Hogan was pursuing a pre-deprivation claim, and given that Hogan had multiple opportunities to tell the court that she was pursuing a pre-deprivation claim, it was reasonable to conclude that Count II included no such claim and that any such claim embedded in the complaint was waived by her failure to reference it when arguing why Count II should not be dismissed or when moving to specify the future course of proceedings.

administrative appeal] will not be tolerated, subject only to an exception for those circumstances in which the course of 'direct appeal' review by a court is inadequate and court action restricting a party to [Rule 80B review] will cause that party irreparable injury.'" *Colby v. York Cnty. Comm'rs*, 442 A.2d 544, 547 (Me. 1982) (quoting *Fisher v. Dame*, 433 A.2d 366, 372 (Me. 1981)).[12]

### a. Absent clarification from the Supreme Court, we will continue to apply our exclusivity rule to § 1983 claims.

[¶45]  Although the exclusivity rule clearly applies to claims asserted as independent from administrative appeals when the independent claim is based on state law, a question arises about whether Maine's exclusivity rule applies when the independent claim is based on 42 U.S.C.A. § 1983, a federal statute.

[¶46]  In *Patsy v. Fla. Bd. of Regents*, 457 U.S. 496, 498, 516 (1982), the Supreme Court held, in a case originally filed in federal district court, that a plaintiff need not exhaust his administrative appeal remedies before asserting a § 1983 claim.  In a recent decision in a case where a § 1983 claim proceeded in state, not federal, court, the Supreme Court held that Alabama could not

---

[12]  *See Marxsen v. Bd. of Directors, M.S.A.D. No. 5*, 591 A.2d 867 (Me. 1991) (referencing "the unquestioned authority of this [C]ourt to affirm a case on a rationale different from that relied on by the trial court") *overruled on other grounds by Underwood v. City of Presque Isle,* 1998 ME 166, ¶ 22, 715 A.2d 148.  Here, we affirm based on the court's ground for dismissal, but we add as an independent ground for dismissal the claim's failure to state a claim.

require exhaustion of the state administrative remedy before the plaintiffs could pursue their § 1983 claims. *Williams v. Reed*, 604 U.S. 168, 145 S. Ct. 465, 471 (2025). The Court did so, however, in a narrow context: when disallowing the § 1983 claim from proceeding would immunize the state action allegedly violating due process requirements. *Id.* The court expressly declined to address the broader question of whether a state court was federally preempted when a due process claim does not fall into the immunity category. *Id.* at 470 n.2.[13]

[¶47] Our exclusivity rule does not immunize the claim contained in the § 1983 claim from being addressed in the sense that deprivation of due process is a ground that can be asserted and relief awarded in a Rule 80B complaint. It does, however, preclude assertion of the due process violation as a § 1983 claim. The question is whether the holding in *Williams* preempts the

---

[13] The immunity context arose in *Williams* because the petitioners claimed that the state agency unlawfully delayed the administrative process, which, the majority said, put plaintiffs in a "catch-22." 145 S. Ct. at 471. The Court explained:

> In essence, Alabama has said that to challenge delays in the administrative process under § 1983, you first have to exhaust the administrative process. Of course, that means that you can *never* challenge delays in the administrative process. That catch-22 prevents the claimants here from obtaining a merits resolution of their § 1983 claims in state court and in effect immunizes state officials from those kinds of § 1983 suits for injunctive relief.

*Id.* In short, if the petitioners could not sue until they completed the administrative process, they could never sue under § 1983 to obtain an order expediting the administrative process.

application of our exclusivity rule to § 1983 claims that are duplicative of claims assertable in an administrative appeal.[14]

[¶48] We have in the past applied the exclusivity rule to dismiss § 1983 claims. *E.g.*, *Kane v. Comm'r of Dep't of Health & Hum. Servs.*, 2008 ME 185, ¶¶ 30-32, 960 A.2d 1196; *Antler's Inn*, 2012 ME 143, ¶ 14-15, 60 A.3d 1248. Because the Supreme Court has not clearly and definitively foreclosed the application of a state's exclusivity rule in state court when the gravamen of the § 1983 claim can be addressed in the administrative appeal and meaningful redress can be provided in that appeal, we will adhere to our precedent that the rule may apply, particularly given that Hogan has not argued that the exclusivity rule is preempted as to her § 1983 claim.

### b. The court's application of the exclusivity rule was not an abuse of discretion.

[¶49] We review the court's dismissal of a claim under our exclusivity rule for abuse of discretion. *Cape Shore House Owners Ass'n v. Town of Cape Elizabeth*, 2019 ME 86, ¶ 7, 209 A.3d 102.

---

[14] In a related but not directly applicable context, the Supreme Court has held that when determining whether post-deprivation process is adequate for due process purposes, the inability of a claimant to obtain a remedy identical to that provided under § 1983 does not foreclose the adequacy of the post-deprivation process. *Hudson v. Palmer*, 468 U.S. 517, 535 (1984). Hence, the fact that damages are not available in an administrative appeal does not foreclose the adequacy of the state remedy. *See Farris v. Poore*, 841 F. Supp. 2d 436, 440 n.6 (D. Me. 2012) (holding that "with respect to money damages it is plain that 80B does not need to provide all the same remedies that are available under section 1983 in order to be considered an adequate remedy").

[¶50]    Count II alleges that the proceedings before the committee deprived Hogan of procedural due process.  Such a claim is a basis for relief under Rule 80B, and, if deemed meritorious, could have resulted in Hogan's reinstatement to the RT Program and the expungement of her disciplinary record.  *See Fisher*, 433 A.2d at 372, 374 (explaining that the exclusivity rule applies when direct review affords an adequate remedy and the review is "broad enough in scope to allow judicial review of all the issues the aggrieved party seeks to have judicially considered").  Hence, the criteria for application of the rule are satisfied.

[¶51]  On multiple occasions we have upheld dismissals of § 1983 claims based on procedural due process under our exclusivity rule.  *E.g.*, *Kane*, 2008 ME 185, ¶¶ 2, 30-32, 960 A.2d 1196; *Colby*, 442 A.2d at 546, 547-48; *Antler's Inn*, 2012 ME 143, ¶¶ 14-15, 60 A.3d 1248.

[¶52]  Hogan has not articulated any cogent reason to either the Superior Court or to us as to why the exclusivity rule should not apply to her claim that the committee's proceedings deprived her of adequate process.  For these reasons, there was no abuse of discretion in the dismissal of Count II based on the exclusivity rule.

32

**C.**   **Count III: The Superior Court did not abuse its discretion in dismissing Hogan's educational discrimination claim under the exclusivity rule.**

[¶53]   Whether the Superior Court abused its discretion in dismissing Count III under the exclusivity rule involves a more complicated analysis than that applicable to Count II.

[¶54]   Count III alleges education discrimination under 5 M.R.S. § 4601 based on Hogan's race and national origin.  Such a statutory claim shares many features with procedural due process claims such as Count II, rejected under the exclusivity rule.  The bias of the decision-maker is a due process violation. *See Wolfram v. Town of N. Haven*, 2017 ME 114, ¶ 20, 163 A.3d 835 ("An administrative process may be infirm if it creates an intolerable risk of bias or unfair advantage." (quotation marks omitted)).  In *Adelman*, 2000 ME 91, ¶ 7, 750 A.2d 577, we held that the plaintiff's allegations of bias "are (and were) properly addressed in the Rule 80B appeal—not in an independent claim of bias, which would be duplicative of the Rule 80B appeal.  The Superior Court, therefore, did not exceed the bounds of its discretion by striking the independent bias claim."

[¶55]   Other characteristics of a claim pursuant to section 4601 also support the conclusion that the exclusivity rule could apply.  Hogan's dismissal

from the RT program, allegedly based on her national origin, can be fully addressed in a Rule 80B appeal of her dismissal, and meaningful relief of reinstatement and expungement of her disciplinary record can be provided.

[¶56] Before us, Hogan argues that her claim is not duplicative or subject to our exclusivity rule because her claim is not limited to her dismissal. Instead, Hogan argues that she has asserted that she was systematically discriminated against in various ways while a student at KVCC. To support her argument that Count III includes such a claim, she cites allegations in Count III that "KVCC staff and teachers told Plaintiff they could not understand her and ignored her questions or did not respond to her requests for help, while the same staff and teachers answered questions and responded to requests for help from Plaintiff's non-Asian, non-Chinese peers"; "KVCC applied its policies differently to Plaintiff than to white American KVCC students, including on numerous occasions giving additional time for assignments or opportunities to re-submit work to improve grades to white American KVCC students while denying Plaintiff the same opportunities"; and "KVCC staff failed to include Plaintiff in assignment grades and in exam preparation meetings where all other students were included and only Plaintiff was left out."

34

[¶57]  A claim of educational discrimination in violation of section 4601 could, in the abstract, comprise a viable independent claim, particularly when the claim involves additional facts and when the issues presented in the independent claim cannot all be addressed within the scope of a review of a specific administrative decision.  The question here, however, is not abstract; rather, the question is whether Count III of Hogan's operative complaint reflects a viable independent claim within the specific context presented here.

[¶58]  In the second hearing before the committee, following the Superior Court's remand, Hogan argued that she had generally been discriminated against during her tenure in the RT program.[15]

---

[15]  Among other things, Hogan submitted evidence that stated:

> During my time at KVCC's Respiratory Therapy program, I have sometimes felt that people treat me differently, and for a long time, I did not understand why.  During the spring semester of 2022, I began to understand why.  I experienced treatment by several preceptors at clinical sites throughout central Maine that I can only understand when I think about them through the lens of racism.

Hogan goes on to explain that she had heard comments from "people at KVCC and at clinical sites" as to how they do not understand her when she speaks; that sometimes preceptors at her clinical sites would not provide feedback or explanations for giving her low evaluation scores; that she was treated differently from other students even though she had been performing in the same way as the other students; and that all students should be treated the same regardless of race or national origin or whether they speak with an accent.  In sum, she asked the committee "to think about things through the lens of [her] experience as a student of color who has received very different treatment than [her] white classmates."

[¶59]  Given this submission from Hogan, the committee reviewed whether race or national origin had played a part in her treatment and found that the answer was no.  This finding was not challenged by Hogan.

[¶60]  Hogan also never told the Superior Court that she sought to advance a claim of discrimination separate from her claim of wrongful dismissal.  In Hogan's motion to specify the course of the proceedings before the Superior Court, her only argument supporting the motion was one sentence asserting that it "would be confusing for both the Court and the parties" if the court declined to sever the counts.  In her opposition to the motion to dismiss, Hogan alluded conclusorily to the Dean's actions, again providing no notice that she sought to pursue a claim separate from the claim that she had been wrongfully dismissed.  This was the case even though, in its motion to dismiss Count III, KVCC acknowledged that the operative complaint contained allegations that Hogan "experienced racial discrimination" while attending the RT Program but stated that those allegations "appear[ed] to be intended as the factual predicates for her claim that the Dismissal Decision was retaliatory, rather than as the basis of a separate, standalone discrimination claim."  Hogan did not dispute this characterization in her response to KVCC's motion to dismiss.  Nor did she do so when, in its order, the court agreed with KVCC that

the operative complaint seemed "to be using those factual allegations to support the claim that the disciplinary committee's most recent decision to dismiss Hogan from the respiratory therapy program was based on or influenced by bias and/or discrimination against her."

[¶61] In short, there is an unchallenged finding that Hogan was not subjected to discrimination, and before the Superior Court, Hogan never alerted the court or KVCC that if the court affirmed the committee's dismissal, she intended to embed a separate discrimination claim in Count III.[16]

[¶62] In sum, while an educational discrimination claim might in the abstract constitute a claim independent of a Rule 80B appeal, it was not an abuse of discretion to apply the exclusivity rule to Hogan's discrimination claim under the circumstances presented here, where the issue of discrimination was

---

[16] Further, before us, Hogan does not explain why she never indicated to the court that Count III's allegations regarding discrimination while at KVCC were not meant, as KVCC and the court posited, to serve as factual predicate for her dismissal claim but to include a claim of discrimination separate from a claim focused on her dismissal. In her blue brief, Hogan simply notes the inclusion of the allegations we cite *supra* ¶¶ 18-20, and although KVCC pointed out in its red brief the lack of notice of an intent to advance a separately viable discrimination claim, Hogan did not respond to this point in her reply brief. As reflected by our bifurcated analysis of Count II, the analysis as to whether to apply the exclusionary rule is not identical to the analysis applied when determining whether a complaint states a claim. Hogan appears to misapprehend this distinction, describing the court's dismissal under the exclusivity rule as a dismissal under M.R. Civ. P. 12(b)(6) subject to de novo review. Under Rule 12(b)(6), the court liberally construes allegations to determine whether those allegations can state an actionable claim, and we review the court's determination de novo. *See Garey v. Stanford Mgmt., LLC*, 2024 ME 46, ¶ 7, 319 A.3d 1022. In contrast, as noted above, we review the court's decision whether the exclusivity rule applies for abuse of discretion, looking at all relevant circumstances. When the determination is being made whether an independent claim is duplicative and subject to the exclusivity rule, it is incumbent upon the claimant, when presented with a motion to dismiss, to clarify the scope of the claim and to explain why the claim is not duplicative.

raised and rejected in the administrative proceeding determining whether to dismiss Hogan from the RT Program; Hogan did not challenge that finding; Hogan did not alert the court that she sought to pursue a discrimination claim divorced from that dismissal determination; and, despite the lack of any challenge to the discrimination finding of the administrative body, the Superior Court reviewed the administrative record and concluded that discrimination did not infect the defendant's decision-making.

The entry is:

Judgment affirmed.

---

Timothy E. Zerillo, Esq. (orally), and Seth T. Russell, Esq., Zerillo Law Firm, LLC, Portland, for appellant XinXiu Tina Hogan

Jeana M. McCormick, Esq. (orally), and Oliver Mac Walton, Esq., Drummond Woodsum, Portland, for appellee Kennebec Valley Community College

Somerset County Superior Court docket number AP-2023-5
FOR CLERK REFERENCE ONLY